521 So.2d 818 (1988)
James B. GARDNER, et ux., Plaintiffs/Appellants,
v.
Paul LAKVOLD d/b/a Wash on Wheels, et al., Defendants/Appellees.
No. 19,396-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
Lunn, Irion, Johnson, Salley & Carlisle by Gerald M. Johnson, Jr., Shreveport, for plaintiffs/appellants.
Blanchard, Walker, O'Quin & Roberts by Roy S. Payne, Julie M. Lafargue, Bodenheimer, Jones, Klotz & Simmons by Frank H. Thaxton, III, Shreveport, for defendants/appellees.
Before HALL, C.J., and FRED W. JONES, Jr., and SEXTON, JJ.
HALL, Chief Judge.
This is a property damage action involving the removal of paint from the outside of a house, owned by the plaintiffs James B. Gardner and Sally I. Gardner. The defendants are Paul Lakvold d/b/a Wash on Wheels, the contractor of the paint removal job; American Insurance Company, Mr. Lakvold's liability insurer; and Diedrich Chemicals-Restoration Technologies, Inc., the manufacturer of the caustic substance used by Mr. Lakvold to remove the paint from the plaintiffs' house.
The issue is the applicability of two exclusionary clauses contained in a comprehensive general liability policy issued by American to Mr. Lakvold. Plaintiffs appeal *819 the trial court's granting of a motion for summary judgment in favor of American denying insurance coverage on the basis of these exclusions. We reverse and remand.
In March, 1985 the plaintiffs conferred with Paul Lakvold d/b/a Wash On Wheels and Robert H. Nance regarding whether the paint on their home could be removed and the house repainted. Mr. Lakvold told the plaintiffs that he could remove the paint, with the exception of the edges around the doors and windows, and that the house could be repainted. The plaintiffs subsequently contracted with Mr. Lakvold for the removal of the paint from their house and with Mr. Nance for the repainting of the house.
Mr. Lakvold used caustic chemicals manufactured by Diedrich Chemicals-Restoration Technologies, Inc. and high pressure water hoses to remove the paint from the Gardner's home. During this process, water leaked through the windows and doors damaging the interior of the home. The work continued, however, and in late March or early April, 1985, Mr. Lakvold told plaintiffs that he had removed all the paint he could from the house and that he had asked Mr. Nance to inspect the house to see if he could accept it. Mr. Nance reported to the plaintiffs that a considerable amount of paint remained on the house and that he could not paint it in that condition. He also told the plaintiffs that the wood siding had been damaged by the high pressure water hoses and that the house would have to be sanded before it could be repainted. Mr. Lakvold offered to redo the paint removal process but plaintiffs' refused, choosing instead to have Mr. Nance remove the remaining paint with an alternative process. After removing the rest of the paint, Mr. Nance applied the new paint, finishing in June, 1985. By late August or early September the new paint had begun deteriorating.
Mr. Nance opined that when Mr. Lakvold attempted to remove the old paint he had apparently failed to neutralize and/or thoroughly wash the caustic chemicals from the surface of the house and the remaining chemicals were dissolving the new paint. Mr. Nance advised the plaintiffs that they should wait at least a year for the chemical seepage to subside and then strip the affected area down to the bare wood with a neutralizer before repainting. Mr. Nance estimated that this process would cost $5,000.00. He also estimated that an additional $2,500.00 might be needed for work on any areas that might continue to dissolve.
At the time of the incidents complained of, there was in full force and effect a policy of comprehensive general liability insurance issued by the American Insurance Company to Mr. Lakvold which provided property damage coverage. American conceded that the policy provided coverage for the damage to the interior of the house caused by Mr. Lakvold's negligence in allowing water to leak into the house but denied coverage for any repair or restoration work to the exterior of the home. American contends that the damage to the exterior of the home arose out of the allegedly poor workmanship of Mr. Lakvold and the defective materials he used and that the liability policy which it issued to Mr. Lakvold specifically excluded coverage for property damage claimed for repair or replacement of work performed by Mr. Lakvold. The exclusions contained in the "Broad Form Property Damage Liability Coverage (Including Completed Operations)" relied on by American provide as follows:
"This insurance does not apply:
(2) ...
(d) to that particular part of any property, not on premises owned by or rented to the insured ...
(iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured;
(3) with respect to the completed operations hazard ... to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith."
At the outset we note that the plaintiffs are not seeking to recover the cost of hiring someone to complete the paint removal *820 work undertaken by Mr. Lakvold. They concede that the cited exclusions would preclude coverage for that item of damages. They do, however, claim that there is coverage for the destruction of the new paint job, the cost of stripping the new paint job and the cost of painting the house a second time.
Exclusion (2)(d)(iii) is not applicable in that it excludes coverage for restoration, repair or replacement of property necessitated by "faulty workmanship thereon". The property of the plaintiffs that was damaged was the new paint job. Mr. Lakvold did not work on the new paint job at all, therefore the damages to it could not have been necessitated by his "faulty workmanship thereon". Rather, the damage to the new paint job was caused by Mr. Lakvold's faulty workmanship on the old paint and consequently damages to the new paint job are not excluded from coverage.
Exclusion (3) is generally referred to as a "work product" exclusion. American contends that a liability insurer who includes such an exclusion in its policy is not liable for damages to the "work product" of the insured due to negligent, faulty or defective construction and workmanship, citing Magill v. Owen Construction Co., Inc., 434 So.2d 520 (La.App. 2d Cir.1983); Aetna Insurance Co. v. Grady White Boats, Inc., 432 So.2d 1082, (La.App. 3d Cir.1983); Old River Terminal Co-Op v. Davco Corp., 431 So.2d 1068 (La.App. 1st Cir.1983); and Fredeman Shipyard v. Weldon Miller Contractors, Inc., 497 So.2d 370 (La.App. 3d Cir.1986). The cases cited by American are distinguishable from the present case in that they concern damages to the actual item constructed or worked on by the contractor rather than damages to other property belonging to the plaintiffs.
A case involving facts analogous to the present case is Hendrix Electric Co., Inc. v. Casualty Reciprocal Exchange, 297 So.2d 470 (La.App. 2d Cir.1974). There an electrical contractor who had been hired to install exterior garage lighting and convenience outlets for garage units at Barksdale Air Force Base damaged an existing power panel. The court interpreted an exclusion similar in wording to exclusion (3) and held that the damage was not to any "work performed by or on behalf of the named insured" but rather to existing property of the Government and therefore the exclusion did not apply.
Similarly, exclusion (3) does not apply to the facts of the present case. The damage was not to any "work performed by the named insured." The damage was to other property of the plaintiffs, that is, the new coats of paint applied by Mr. Nance. The American policy provides coverage for these damages just as it provides coverage for the damage to the interior of the house. In both cases the damage was caused by the negligence or faulty workmanship of Mr. Lakvold or faulty materials used by him but was not caused by faulty workmanship on the interior of the home or on the new paint job. Nor was the interior of the home or the new paint job the object of the work contracted to be performed by Mr. Lakvold.
For the reasons assigned, the judgment of the district court is reversed, the motion for summary judgment is overruled, and the case is remanded to the district court for further proceedings. The costs of appeal are assessed to appellee, The American Insurance Company.
Reversed and remanded.