675 So.2d 1195 (1996)
CONTINENTAL GRAPHICS SERVICES, INC.
v.
HANOVER LOUISIANA, INC.
No. 96-CA-78.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 1996.
*1196 Lawrence G. Pugh, III, David E. Redmann, Jr., Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for Plaintiff/Appellant.
Burt K. Carnahan, Michael J. Tarleton, Diana Tonagel, Lobman, Carnahan and Batt, Metairie, for Defendant/Appellee.
Before WICKER, GOTHARD and DALEY, JJ.
GOTHARD, Judge.
Plaintiff, Continental Graphics Services, Inc., appeals the granting of a summary judgment in favor of defendant, Hanover Louisiana, Inc. For the following reasons, we affirm.

FACTS/PROCEDURAL HISTORY
On June 14, 1990, Walle Corporation ("Walle") filed suit in the United States District Court for the Eastern District of Louisiana against Rockwell Graphic Systems, Inc. ("Rockwell") and MAN Roland, Inc. ("MAN"). In the suit, Walle sought damages based on its purchase of an allegedly defective printing press sold by Rockwell and manufactured by MAN.
On March 27, 1991, MAN filed a third party demand against Continental Graphics Services, Inc. ("Continental") and Electro Sprayer Systems, Inc. ("Electro"), seeking indemnity and contribution for any damages for which it would be liable in the underlying suit brought by Walle. MAN's third party complaint alleged that Continental had subcontracted with Electro to install equipment and to modify a dry sprayer system on the printing press. The complaint further alleged that Continental damaged the printing press by acts or omissions in the installation process.
On February 13, 1989, Hanover of Louisiana, Inc. ("Hanover") issued a comprehensive commercial general liability policy (# Z 262 44 86) to Continental. The policy was effective through February 13, 1990. Upon being sued by MAN, Continental requested, pursuant to the liability policy, that Hanover provide a defense to the suit. However, on the basis that MAN's allegations were excluded by the policy, Hanover refused to provide a defense for Continental. Thereafter, Continental retained representation on its own and proceeded to commence with discovery. Prior to trial, the parties entered into a compromise agreement, with MAN dismissing Continental from the suit with prejudice.
In defending itself against MAN's allegations, Continental incurred legal fees and costs in the amount of $28,974.96. To recover these expenses, Continental brought the instant action against Hanover in the 24th Judicial District Court. Continental's claim was based on Hanover's alleged wrongful failure to provide a defense in the federal suit. In addition to its legal fees and costs, Continental sought to recover penalties and attorney's fees from Hanover pursuant to La.R.S. 22:658 and 22:1220.
Before the trial court, both parties moved for summary judgment. The court denied Continental's motion but granted Hanover's motion, thereby dismissing the suit. From this judgment, Continental has appealed.

ASSIGNMENTS OF ERROR
Continental asserts the following errors by the trial court: (1) the court erred in granting Hanover's motion for summary judgment; and (2) the court erred in denying Continental's motion for summary judgment.

LAW
Whether an insurer has a duty to defend is determined by looking to the allegations of the petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Steptore v. Masco Constr. Co., Inc., 93-2064 (La. 8/18/94), 643 So.2d 1213, 1218. Because the insurer's duty to defend is determined by the allegations of the petition, it is broader than the insurer's liability for damage claims. Strauss v. Rivers, 595 So.2d 706, 709 (La. *1197 App. 5th Cir.1992). Thus, assuming all of the allegations of the petition to be true, if there would be both coverage under the policy and liability of the insured to the plaintiff, then the insurer must defend the insured regardless of the outcome of the suit. Steptore, supra. In short, an insurer's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Id.

DISCUSSION
In the instant case, the only issue before us is whether Hanover was obligated to defend Continental in the suit filed by MAN Roland. Based on the definition of "occurrence" and certain exclusions contained in the policy, Hanover argues that it did not have a duty to defend Continental. The trial court agreed with Hanover that it did not have a duty to defend under the policy and thus granted the insurer's motion for summary judgment.
The policy issued to Continental stated that Hanover would pay "those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies." The policy goes on to state that the "bodily injury" or "property damage" must be "caused by an occurrence." Hanover concedes that the allegations of the underlying suit filed by Walle are sufficient to establish "property damage" pursuant to the insurance policy. However, Hanover argues that the alleged property damage was not caused by an "occurrence", as is required by the policy.
The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The jurisprudence establishes that the definition of "occurrence" is not satisfied where the liability of an insured is based on improper construction or faulty work. For example, in Lewis v. Easley, 614 So.2d 780 (La.App. 2d Cir.1993), the Second Circuit affirmed a trial court ruling of noncoverage where the claim against the insured was based on faulty workmanship by the insured in repairing a roof. In reaching its decision, the court reasoned that "no occurrence or accident transpires where the liability of a contractor depends solely on improper construction or faulty repair work." Id. at 782. The First Circuit reached the same result in Swarts v. Woodlawn, 610 So.2d 888 (La.App. 1st Cir.1992).
In the federal court petition, Walle alleged that the printing press "did not perform and never has performed as expressly and impliedly warranted, did not ever become commercially operational or acceptable, has failed to perform its intended function, was not and is not in good working order, and has never met the manufacturer's nor the seller's specifications." Walle further alleged that the printing press was "defective, in materials, workmanship design, composition, fabrication, assembly, construction, and manufacture, lacking in adequate warnings and instructions, and unfit for its intended purpose, and has failed to conform to the descriptions contained" in the contract. In short, then, Walle's basic contention was that the printing press contained a redhibitory vice and thus did not perform in the manner in which it had been warranted. Similarly, MAN Roland's third party complaint alleged that if it was liable "for any damages to Walle Corporation as the result of any defect, failure or other inadequacy of the equipment designed, installed, and/or modified by Electro Sprayer and/or Continental, then third party defendants are liable to third party plaintiff...."
From reviewing the federal court pleadings, it is clear that the allegations against Continental were based on the quality of the work it performed on the printing press. In particular, the pleadings allege that Continental performed its work in a defective or improper manner. As discussed earlier, the jurisprudence holds that allegations of improper construction or faulty work are insufficient to establish an "occurrence" so as to trigger the protections of an insurance policy. Thus, the allegations of damages made against Continental in the federal court suit were not caused by an occurrence as defined in the Hanover policy.[1] Consequently, Hanover *1198 did not have a duty to defend Continental in the underlying federal suit. Accordingly, we hold that the trial court did not err in granting Hanover's motion for summary judgment; likewise, there is no error in the court's denial of Continental's motion for summary judgment.
As we have determined that the property damage alleged by Walle did not arise from an occurrence as required by the policy, it is unnecessary to determine whether the damage was also subject to certain exclusions urged by Hanover. Based on the foregoing, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] We note that the definition of occurrence at issue herein is not precisely the same as that in Lewis and Swarts, supra. In Hanover's policy, occurrence is defined as "an accident, including continuous or related exposure to substantially the same general harmful conditions." The definitions of occurrence in the relevant policies in Lewis and Swarts contain the same basic definition as found in Hanover's policy but then additionally state that the accident must result "in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Despite the foregoing difference, we find the definition of occurrence in Hanover's policy to be substantially similar to those contained in the policies in Lewis and Swarts. Accordingly, we find Lewis and Swarts to be controlling under the instant circumstances.